JOSEPH KELLER and EDNA RIVES, on behalf of themselves and all other stockholders of defendant, Wilson and Co. Inc., similarly situated,

Complainants Below, Appellants,

*vs.*

WILSON & CO. INC.,

Defendant Below, Appellee.

*Supreme Court, On Appeal, Nov. 10, 1936.*

LAYTON, C. J., and HARRINGTON, RICHARDS, RODNEY, and SPEAKMAN, *JJ.*, sitting.

*Terry & Terry,* of Dover, and *Abraham L. Pomerantz* and *Abraham Marcus,* both of New York City, for appellants.

*Hugh M. Morris* and *Edwin D. Steel, Jr.,* both of Wilmington, for appellee.

Supreme Court, January Term, 1936.

LAYTON, C. J., delivering the opinion of the Court:

The question presented is concerned, generally, with the nature and extent of the right of a holder of cumulative preferred stock in a going corporation, as to which dividends have accrued through lapse of time. Specifically, the questions to be determined arise under the amendment of *Section* 26 of the *General Corporation Law* (*Delaware Laws, Vol.* 38, *Ch.* 91, § 3) and the questions are, first, whether the State, under its reserved power may authorize a corporation created by it at a time when the law, as then existing, did not permit the abrogation of dividends on cumulative preferred stock accrued through passage of time, to abolish such dividends by virtue of a statute passed after the creation of the corporation and the issuance of such stock; and, second, conceding the power of the State to enact such law, whether the statute should be construed to operate retrospectively.

It is not contended by the complainants that preferential rights attached to such stock may not be changed in future, but it is submitted that dividends accrued by lapse of time on the stock must be paid before any dividends may be paid lawfully to the holders of the common stock, for the reason that the rights of the dissenting holders of Class A. Stock are vested, and that the amendatory statute, if construed so as to confer the power of annulment upon a

majority of the stockholders by appropriate charter amendment, is repugnant to State and Federal constitutional prohibitions against impairment of contractual obligation and deprivation of property without due proess of law (*Const. Del. Art.* 1, § 7; *Const. U. S. Art.* 1, § 10; *Amend.* 14).

By this contention the state of the law existing at the time of the birth of the corporation and the issuance of the stock is held to control, and, therefore, the rights of the shareholders are fixed, or as it is said, vested, in the sense and to the extent that dividends accrued by lapse of time must be paid before distribution to the common shares.

The defendant insists that the state of the law existing at the time of the corporate action complained of must determine the rights incident to the stock for the reason that the State has reserved the power of amendment, and all amendatory statutes are declared to be a part of the charter.

By this contention the right of a holder of cumulative preferred stock, as to which dividends have accrued through lapse of time is not fixed or vested, except in a defeasible sense.

Modern corporation laws, very generally, contain provisions conferring upon the majority, or some other fraction, of the shareholders the right to amend the articles of incorporation so as to affect intracorporate rights, and the increasing latitude of this power has caused serious thought and comment.

The question presented by this appeal has not been determined by this Court, and some review of the decisions of the Court of Chancery involving the nature and extent of the reserved power is made necessary.

In *Peters v. United States Mortgage Co., et al.,* 13 *Del. Ch.* 11, 114 *A.* 598, the defendant corporation was organized under the *General Corporation Law* as amended by *Chapter 113, Vol. 29, Laws of Delaware. Section 26,* as it then stood,

authorized amendments changing and altering preferences. By a proposed amendment of the articles of incorporation it was sought to deprive the cumulative preferred stock of its right to share in corporate surpluses. The complainant, owner of preferred shares, sued to enjoin the corporate action.

The Chancellor refused the relief prayed for. It was held that the only question presented was whether there was power reserved in the defendant corporation to make the desired change; and that as to this there was no doubt, for *Section* 26 plainly authorized the proposed amendment, and every pertinent provision of our Constitution and statutes is impliedly written into every corporate charter.

The problem clearly was one of statutory construction. It dealt with the right to dividends in the future, not to the dividends past due. Change of preference rights was specifically authorized by the statute under which the corporation was organized, and was notice in itself that the preferential right to share in the apportionment of surplus and net profits, after payment of the stipulated dividends on the preferred and common stock, was conditional. Accordingly a holder of preferred stock could not set up want of consent when a change was about to be made, for he was bound to anticipate the possibility of an alteration of preferential rights.

In *Morris, et al., v. American Public Utilities Co.*, 14 *Del. Ch.* 136, 122 *A.* 696, the defendant corporation was incorporated in 1912. On April 1, 1923, cumulative dividends on the original preferred stock of the corporation in arrears and unpaid, amounted to 24%. By a proposed amendment these shares were to be made junior to two new classes of preferred stock so far as all privileges and rights were concerned, and the accumulated dividends were to be cancelled. In addition, the redemption figure of the stock was to be changed and its voting rights taken away. The complainants, original preferred shareholders, sought

to enjoin the proposed corporate action. *Section* 26 was the same as in the *Peters Case*.

The Chancellor held, as in that case, that *Section* 26 of the *General Corporation Law* was written into the corporate constitution. He elaborated upon the conceptions of a corporate charter as being a contract between the state and the corporation, a contract between the corporation and its stockholders, and, in many particulars, a contract between the stockholders *inter sese*. With respect to the issue of new classes of prior preference stock, it was held that only a preference was involved, and that this change or alteration of the capital structure was clearly permitted by *Section* 26; but that the attempt to destroy the right of an objecting holder of preferred stock to dividends accrued thereon and unpaid, could not be sustained.

His view was that dividends upon cumulative preferred stock accrued through lapse of time and unpaid were something more than a preference, and that the power and authority given by *Section* 26, as it then stood, did not authorize the corporate action.

The reader is referred to the Chancellor's opinion for a full exposition of his views. It is sufficient to say that his opinion was that, under the state of the law then existing, a holder of cumulative preferred stock as to which dividends had accrued by lapse of time, while not a creditor of the corporation in the sense that he was entitled to sue at law for dividends in arrear, but not declared, yet, considering the relations of the shareholders *inter sese*, there was every reason to hold that his right to ultimate payment of such dividends as against those who had agreed thereto, was a vested right. He characterized the right as a present property interest postponable in its enjoyment, but nonetheless assertable upon the arising of the proper contingency, to-wit, earnings sufficient to justify a dividend. He regarded the cumulative feature as one which gave to an accrued and matured dividend the nature and quality of a

debt, which the class of members to whom it is owed are entitled to have paid before that class, who have agreed to its payment, may receive anything; and the conclusion was that the proposed amendment would disturb the rights of the complainants, not in the enjoyment of a preference, but in the enjoyment of a vested right, in that it would deprive an objecting shareholder of "that which in a real sense is his individual property interest."

In *Davis, et al., v. Louisville Gas & Electric Co.*, 16 *Del. Ch.* 157, 142 *A.* 654, the constitutional prohibition against impairment of contractual obligations was raised. The defendant corporation was incorporated in 1913. At the time of the proposed corporate action which was sought to be enjoined, the capital structure of the corporation, accomplished by an amendment of its charter in 1925, was an authorized capital of 1,300,000 shares without par value, consisting of 800,000 shares of Class A. common stock and 500,000 shares of Class B. common stock. The Class A. stock had no voting rights. It was redeemable at any time at $32.50 per share, and upon liquidation was entitled to receive $25.00 per share before distribution to the Class B. stock. It was entitled to receive a dividend at the rate of $1.50 per share annually, before Class B. stock was entitled to receive anything. After provision made for dividends on Class A. stock, Class B. stock was entitled to receive an annual dividend of $1.50 per share. When, for any quarter, each class had received dividends at the above rates, the directors were authorized to declare additional dividends for such quarter out of remaining net profits not in excess of fifty cents per share annually to holders of both classes of shares. Thereafter, further dividends might be declared for the then current quarter to the two classes of stock, in the proportion, share for share, of one for Class A. and four for Class B.

By an amendment submitted, it was proposed to change the terms and conditions of the classes of stock by providing

that whenever, for any quarterly dividend period, dividends at the rate of $1.60 had been paid to Class A. stock, and a like dividend to Class B. stock, any further dividends should be declared on both classes, share and share alike, without distinction as to class; and the right of the corporation to redeem Class A. stock at $32.50 per share was sought to be cancelled.

Each class of stock voted largely in favor of the proposed amendment at a stockholders' meeting held in May, 1928.

*Section* 26, as it then stood, authorized amendments of certificate of incorporation "by changing the number, par value, designations, preferences, or relative, participating, optional, or other special rights of the shares." *Section* 10, *Ch.* 85, *Vol.* 35, *Laws of Delaware,* approved March 2, 1927.

It was conceded that the wording of *Section* 26 was such as to permit the kind of amendment proposed, but it was contended by the complainants that it was beyond the power of the Legislature to authorize such a change in the contractual relations existing between the stockholders as was contemplated; that the right to retire Class A. stock at $32.50 per share, and to receive in dividends one dollar for every twenty-five cents paid to Class A. stock when a certain point was reached in the distribution of earnings, were material and fundamental contract rights which could not be taken from them notwithstanding the legislation of 1927, which, in so far as it sought to permit a disturbance of those rights, was invalid as impairing contractual obligations.

A restraining order was refused. The Chancellor held that the reserved power of the State was all embracing, and that it permitted alterations not only with respect to the contract between the State and the corporation, but also in the purely private aspects of the contract as between the stockholders themselves. His reasoning was that the corporation had all the powers conferred upon it by its

certificate of incorporation and by the statute under which it was created; that power to authorize amendments was reserved by *Section* 82 of the *General Corporation Law;* and that *Section* 26, as it then stood, was so worded as to confer upon corporations the power to effect the kind of amendment complained of, and this power retrospectively was read into the corporate charter, so that there was no violation of the contractual relations of the shareholders *inter sese.* His view was that the State, in authorizing the creation of corporations, is interested, as a matter of public policy, in securing to its corporate creature such powers as are best calculated to promote the corporation's welfare, to advance its interests, and to facilitate the meeting of its business and financial needs; that questions having to do with stock, its kinds, classes, preferences, participations and qualifications were most intimately bound up with the future of the corporation; and, therefore, it was reasonable to suppose that the State had impressed such matters with a public interest and concern, so that even if it be conceded that the power of amendment reserved by the State extends only to those matters which are of public concern, yet it did not follow that the amendment under consideration was to be condemned.

This case has been noticed particularly for the reason that the Chancellor, in the instant case, observed that there he had considered the question fully and that it was not necessary to re-canvass the law. The authorities relied upon in the *Davis Case* were *Hinckley v. Schwarzschild & S. Co.,* 107 *App. Div.* 470, 95 *N. Y. S.* 357, and *Somerville, et al., v. St. Louis M. & M. Co. of Montana,* 46 *Mont.* 268, 127 *P.* 464, *L. R. A.* 1915 *B,* 811. In the first cited case the corporation, as originally organized, had issued common stock only. Subsequently the Legislature authorized the issuance of preferred stock by a vote of two-thirds of the shareholders, which issuance, under the law as it existed when the corporation was formed, required unanimous

consent. The court reluctantly, but compelled, as was said, by the weight of authority, held the enactment to be within the reserved power to alter and amend. It was said that this conclusion would seem to follow as a logical deduction from the power reserved for that, as it rests in the legislative will to repeal the charter of a corporation and destroy its life, so that the Legislature may prescribe such conditions as it chooses to the continued enjoyment of its franchise, and, therefore, it may regulate all of its affairs. Furthermore, it was said, that as the law was general, it might be deemed to exhibit the public policy of the State, and to indicate a legislative intent to promote the public good in connection with the administration of corporate affairs, so that, unless the legislation could be said to constitute an interference with contract or vested rights, the case was brought within the legislative power in every aspect. The court denied the existence of a vested right on the part of the complainants, and proceeded to say that the issuance of preferred shares was a means of raising money for corporate purposes, much the same as the borrowing of money upon mortgage. The corporation received the benefit of the money, the proceeds of the preferred stock, and in that increment the common stockholders shared equally, each standing upon an equal plane.

In the *Somerville Case* it was held that, under the reserved power, the Legislature may authorize corporations to make stock assessable although, at the time it was issued, both the certificate of incorporation and the stock certificates themselves declared that it should not be assessable. The court, as in the *Hinckley Case*, reached its conclusion with reluctance, and observed that if the question were an open one in Montana, the discussion of it might lead to "fruitful results," but that it was bound by a prior decision.

An opposite conclusion was reached in *Garey v. St. Joe Mining Co.*, 32 *Utah*, 497, 91 *P.* 369, 12 *L. R. A.* (*N. S.*)

554, on the ground that action under the amendment of the law would impair existing contract rights.

Without intending to reflect upon the correctness of the conclusion reached in the *Davis Case*, for the situation there presented is not before the court, it, nevertheless, may be said that the situation presented in the *Hinckley Case* differed from that which confronted the Chancellor. In the *Hinckley Case* a new class of stock was issued. All common shareholders were affected in the same way. In the *Davis Case*, the effect of the decision was to permit a majority of the stockholders to change the order of dividend distribution to the detriment of one class of stock and to the corresponding advantage of another class, without creating any new class of stock. The theory that matters relating to the administration of corporate affairs were impressed with a public interest, suggested in the *Hinckley Case*, was elaborated, and from the broad language of the opinion it seems to have been held that all the terms of the agreement between the shareholders, both as to the internal management of the corporation and as to their beneficial interests therein, are but conditions on which the corporate franchise may be exercised, and that the reserved power of the State, gives the State the unqualified right to alter or amend the privilege, or to confer upon the shareholders the right so to do, irrespective of the nature and character of the right invaded. In short, all rights of shareholders are made subservient to "financing corporate needs."

It seems to be agreed, however, that there are limitations upon the power of the State. As said in *Looker v. Maynard*, 179 *U. S.* 46, 21 *S. Ct.* 21, 23, 45 *L. Ed.* 79, speaking affirmatively, the effect of the power is, "at the least, to reserve to the Legislature the power to make any alteration or amendment of a charter subject to it, which will not defeat or substantially impair the object of the grant, or any right vested under the grant, and which the Legislature may deem necessary to carry into effect the purpose of

the grant, or to protect the rights of the public or of the corporation, its stockholders or creditors, or to promote the due administration of its affairs."

In *Coombes v. Getz*, 285 *U. S.* 434, 52 *S. Ct.* 435, 436, 76 *L. Ed.* 866, it was said,

"The authority of a state under the so-called reserved power is wide; but is not unlimited. The corporate charter may be repealed or amended, and, within limits not now necessary to define, the interrelations of state, corporation, and stockholders may be changed; but neither vested property rights nor the obligation of contracts of third persons may be destroyed or impaired."

In the instant case the question was stated to be the narrow one, "whether it was in the power of the Legislature by way of amendment of the act, to enlarge the scope of the subjects which corporations theretofore existing might themselves alter by self-amendment of their own charters, so as to effect changes which, when the corporations were created, they could not effectuate against the will of an objecting stockholder."

The question, as put, may not be answered categorically. The answer must depend upon the extent of the enlargement of the "scope of subjects," and the nature and character of the right affected. A vested right may not be destroyed. Therefore, the question to be determined is, what is the character of the right of a holder of cumulative preferred stock in a going concern as to which stock dividends have accrued through lapse of time? Is the right, in a real sense, a vested right, or is it a defeasible right, subject to destruction by corporate action under subsequent legislation?

It is difficult to define the term "vested right" with exactness; but, generally speaking, a vested right is property, as tangible things are, when it springs from contract or the principles of the common law. 2 *Sutherland Stat. Cons.*, (2d Ed.) § 671. Judge Cooley observes that the term, vested right, "in its application as a shield of protection is not used in any narrow or technical sense, or as importing a power of legal control merely, but rather as implying a

vested interest which it is right and equitable that the government should recognize and protect, and of which the individual could not be deprived without injustice." 2 *Cooley Cons. Lim.*, (*8th Ed.*) 745.

This language was quoted with approval in *Diamond State Iron Co. v. Husbands*, 8 *Del. Ch.* 205, 68 *A.* 240. And the eminent author continues,

"But as it is a right which rests upon equities it has its reasonable limits and restrictions; it must have some regard to the general welfare and public policy; it cannot be a right which is to be examined, settled and defined on a distinct and separte consideration of the individual case, but rather on broad and general grounds, which embrace the welfare of the whole community and which seek the equal and impartial protection of the interests of all."

In *Penington v. Commonwealth Hotel Construction Corporation*, 17 *Del. Ch.* 394, 155 *A.* 514, 516, 75 *A. L. R.* 1136, the proceedings were in dissolution. The creditors had been paid in full. The amount of money in the receiver's hands was not sufficient to repay the capital paid in. There was not, nor had there been a surplus or net profits. The question was, were the holders of cumulative preferred stock entitled to have paid them, in addition to the par value of their shares, unpaid cumulative dividends under a provision of the charter that, in case of dissolution, the holders of the preferred stock, "shall be entitled to be paid in full the par value thereof, and all unpaid dividends accrued thereon," before distribution among the common stockholders. The Chancellor held that since no profits or surplus existed, no dividends on the preferred stock had, or could have, accrued, and, therefore, no unpaid dividends could be given preference in dissolution proceedings. This Court, Harrington and Richards, J. J., dissenting in part, disagreed with the Chancellor's conclusion. Reference was made generally to the *Morris Case, supra,* for its excellent treatment of the rights of holders of cumulative preferred stock, and the language of the Chancellor was quoted " "* * * That as soon as the agreed dividends which the preferred stockholder is to receive is matured by time, a

right to its ultimate payment as against those who have agreed to its payment becomes a vested right. It is a present property interest.'" The court proceeded to say,

"Applying then the law relative to cumulative preferred stock to the case at bar what is the situation at the arrival of the date fixed for the first payment of the preferred dividends? There is no legal fund (surplus or profits), in this going concern from which this preferred dividend can be paid. As against the common stockholders, however, the right to this dividend is fixed and vested but the payment must be postponed until there exists a fund from which payment can legally be made. * * * The dividend cannot be paid, but the claim exists and the dividend accrues and the amount accumulates awaiting the existence of a legal fund for its payment."

And, accordingly, it was held, the receiver having in hand a fund from which payment could be made, that the preferred stockholders, with fixed and vested rights to certain dividends, were entitled to have them paid. See, also, *Willson, et al., v. Laconia Car Co.*, 275 *Mass.* 435, 176 *N. E.* 182.

In *Roberts v. Roberts-Wicks Co.*, 184 *N. Y.* 257, 77 *N. E.* 13, 15, 3 *L. R. A.* (*N. S.*) 1034, 112 *Am. St. Rep.* 607, 6 *Ann. Cas.* 213, the corporation reduced its capital stock giving to each stockholder his proportionate number of shares in exchange for his former holdings. The corporation afterwards earned surplus profits, and it was held that the holders of cumulative preferred stock had a prior right to a sufficient amount of those profits to pay the arrears of dividends on the shares held by them prior to the reduction of the stock. The court spoke of the obligation thus arising as an "indebtedness," a "debt," and of the rights of a preferred shareholder as a "prior charge upon the net earnings."

White, Justice, in his concurring opinion in *General Investment Co. v. American Hide & Leather Co.*, 98 *N. J. Eq.* 326, 129 *A.* 244, 249, 44 *A. L. R.* 60, put the question, and answered it in the negative, "Can the rights of the preferred stockholders to receive compensation according to their contract, even though at some future time, for the period during which their money has already remained

invested on the faith of that contract, be absolutely wiped out and destroyed?"

In *Yoakam v. Providence Biltmore Hotel Co., (D. C.)* 34 *F.* (2d) 533, the defendant corporation was organized under the *Delaware General Corporation Law* in 1920, with first and second cumulative preferred stock and no par common stock. The certificate of incorporation provided for maintenance of a sinking fund for the redemption of the first preferred stock. In November, 1928, a plan of reorganization was proposed by which, *inter alia,* prior cumulative preferred stocks, denominated as A and B, were to be created, the holders of the first preferred stock to have the right to receive in exchange for each share one share of each of the new issues, and one-half share of common stock, and the further right to subscribe for an additional half share of common stock at $20.00 per share, conditioned, however, on the waiver of all rights to accrued and unpaid dividends. After December 31, 1928, the dividends upon the first preferred stock were no longer to be cumulative, and the annual sinking fund for the retirement of the stock was, for the future, to be abolished. Other provisions of the plan are not necessary to be stated. As of December 31, 1928, there was cash on hand in excess of $400,000.00, and accounts payable in excess of $6000.00. Accumulated dividends on the first preferred stock amounted to $42.00 per share. At a meeting of stockholders held in December, 1928, approximately 82 per cent. of the outstanding first preferred stock was voted in approval of the amendments necessary to carry the plan into effect. The complainant, holder of first preferred shares, objected to the plan, and sought to restrain the proposed corporate action. It was held that a holder of preferred stock, upon which a cumulative or guaranteed dividend has accrued and which remains unpaid, has a vested interest, which in the absence of prior consent, may not be extinguished in any corporate surplus which might lawfully be applied in pay-

ment of such accrual to the extent not in excess of such arrears, and in the proportion that the dividends accrued upon his stock bears to the total accrued and unpaid dividends upon all the outstanding stock of the same class. The court definitely refused to follow the reasoning of White, Justice, in the cited case. It was also held that the sinking fund provision in the corporate charter was a contractual commitment, and that, at the time of the formation of the corporation there was no limitation upon the corporate powers sufficiently definite to be read as a term or condition of the contract, and that, therefore, the charter amendment was invalid.

In *Sutton v. Globe Knitting Works*, 276 *Mich*. 200, 267 *N. W*. 815, 105 *A. L. R*. 1447, the plaintiff and appellant was the owner of preferred stock of the defendant company. Both the articles of association and the stock certificates provided for the redemption of the stock at par on January 25, 1932. On that date the plaintiff tendered his stock for redemption. The defendant refused to redeem the stock basing its refusal upon an amendment of the articles of association extending the redemption date to January 25, 1957, which amendment had been accomplished after the acquisition of the stock by the plaintiff, but prior to the original redemption date. The General Corporation Law permitted amendments of articles of association without limitation so long as the articles as amended would have been authorized by the act as original articles. A general saving clause protected against impairment rights accruing, accrued or acquired prior to the time of the taking effect of the act.

The court held that it might be fairly assumed that the redemption provision was an inducing cause in consequence of which the plaintiff purchased the stock; and, therefore, it was not a mere incident to corporate relationship, but a definite contractual undertaking, which was protected against impairment, citing *Coombes v. Getz*,

*supra; Yoakam v. Providence Biltmore Hotel Co., supra; Fletcher's Ency. Corp., (Revised Ed.) Vol. 7, §§ 3680, 3681; Vanden Bosch v. Michigan Trust Co., (C. C. A.) 35 F. 2d) 643.*

The right of a holder of cumulative preferred stock, issued at a time when the law did not permit of the cancellation of accrued and unpaid dividends against the consent of the holder, to such dividends, is, and ought to be regarded as a <u>substantial</u> right. It may reasonably be supposed that one who invests his money in cumulative preferred stock relies largely upon the right to receive the stipulated dividends at some time. Speaking generally, the investor seeks certainty as against a speculative rise in price. The right to such dividends gives value to the stock, easily recognizable even during periods when the dividends are not paid. As the right is an inducement to buy, so oftentimes is it an inducement to retain. To say that cumulative dividends cannot be paid where there are no profits at hand from which to pay them is not to say that they do not accrue under the contract; and unless the corporate surplus and the financial condition of the corporation are such that it would be an abuse of discretion on the part of the management not to declare and pay a dividend on cumulative preferred stock, there seems to be no more reason to view the right of the shareholder as vested than in the case where no surplus exists at all, for in either situation the shareholder has no immediate assertable right, nor may he ever have such right.

If, as this court reasoned in the *Penington Case,* that the right to have paid at some future time the accumulation of dividends on preferred stock, was, as between the shareholders, a fixed and vested right, having the nature and character of a debt, postponable in enjoyment until the creation of a fund from which payment legally could be made, it is difficult to perceive the justice of permitting the corporation to destroy the opportunity to create the fund

by action under a subsequent amendment to the law which, when the corporation was formed and the stock issued, did not permit of such destruction.

It may be conceded, as a general proposition, that the State, as a matter of public policy, is concerned in the welfare of its corporate creatures to the end that they may have reasonable powers wherewith to advance their interests by permitting adequate financing. It may also be conceded that there has been an increasing departure from the conception which formerly prevailed when the right of individual veto in matters of corporate government operaated as a dangerous obstruction to proper functioning. But in determining whether the rights of the complainants herein are such as ought to be regarded as property rights, all aspects of the question must be considered to ascertain what is conducive to the best interests of society. The State is concerned also with the welfare of those who invest their money, the very essence of generation, in corporate enterprises. Some measure of protection should be accorded them. While many interrelations of the State, the corporation, and the shareholders may be changed, there is a limit beyond which the State may not go. Property rights may not be destroyed; and when the nature and character of the right of a holder of cumulative preferred stock to unpaid dividends, which have accrued thereon through passage of time, is examined in a case where that right was accorded protection when the corporation was formed and the stock was issued, a just public policy, which seeks the equal and impartial protection of the interests of all, demands that the right be regarded as a vested right of property secured against destruction by the Federal and State Constitutions.

We are of opinion, therefore, that the amendment of the corporate charter, in so far as it assumed to destroy the rights of the complainants to dividends accrued upon their stock up to the time of the accomplishment of the amendment, is null and void. Accordingly, the arrears of such

dividends accumulated upon their stock must be paid to them before distribution may be made to the holders of the common stock.

Quite apart from the constitutional question involved, the same conclusion must be reached.

*Section* 26 of the *General Corporation Law* is the section authorizing amendments of corporate charters. It authorizes nothing more than it purports to authorize, the amendment of charters. The cancellation of cumulative dividends already accrued through passage of time is not an amendment of a charter. It is the destruction of a right in the nature of a debt, a matter not within the purview of the section. The cancellation of the right to such dividends is foreign to the design and purpose of the section. The effect of the charter amendment, in so far as is concerns the status of the shares and the rights of the owners, speaking from the time of its accomplishment, is not denied by the complainants; but there is nothing in the language of the section, as amended, which compels a retrospective operation. The rights of cumulative preferred shareholders to the stipulated dividends accrue to them by virtue of the contract. That right exists and persists. When the necessary corporate action, under the amended statute conferring the power is taken, the status of the shares may be changed, and the right thereafter to claim the dividends as originally stipulated may be cancelled, but the amended statute under the general rule of construction, ought not to have a retroactive effect.

From the time of our first reports the principle has been declared that the court will not infer an intention to make an act retrospective. *Jones v. Wootten,* 1 *Har.* 77. In *Smith v. Clemson,* 6 *Houst.* 171, it was said that to give an act a retrospective operation would be contrary to well settled principles of law applicable to the construction of statutes unless it be plainly and unmistakably so provided by the statute. In *Diamond State Iron Co. v. Husbands,*

*supra,* it was said that retrospective legislation as a rule is deemed dangerous and generally reprehensible. The principle was clearly recognized by the former Court of Errors and Appeals in *Cook v. Gray,* 2 *Houst.* 455, 81 *Am. Dec.* 185.

The Chancellor, in his opinion herein, *held* that the amendment of *Section* 26 (35 *Del. Laws, c.* 85, § 10) was purposely adopted to obviate the consequences of the *Morris Case,* from which a legislative intention was inferred to give to the enactment a retrospective operation. A majority of the court in *Harr v. Pioneer Mechanical Corporation,* (*C. C. A.*) 65 *F.* (2d) 332, was of the same opinion. To the same effect is *Lowell v. United Milk Products Corporation, et al.,* an unreported decision of the United States District Court for the Northern District of Ohio. Judge Learned Hand, in his dissenting opinion in the *Harr Case,* on the contrary, could find nothing in the amendment which ought to be construed retrospectively. With this conclusion we are in accord.

By inference it may be said that the Legislature intended the amendment to operate retrospectively, but with deference to the views of the learned Judges who are of contrary opinion, we think that if rights in the nature of a debt are to be destroyed by corporate action under subsequent legislation, the purpose and intent of the Legislature to give its enactment a retroactive operation and thus to destroy those rights, should be expressed in language so clear and precise as to admit of no reasonable doubt. It is one thing to confer a general power to accomplish a purpose in the future. It is quite another thing to say that the power may be exercised to destroy a right accrued and recognized as a vested right of property.

It is contended by the appellee that the defendant, in altering its capital structure, merely exercised an amendatory power which the complainants, when they accepted their stock, voluntarily stipulated it might exercise. This

contention is based upon the third paragraph of the certificate of incorporation which, in part, reads,

"It is also the intention that said clauses be construed as powers as well as objects and purposes; and, generally that the Corporation shall be authorized to exercise all other powers, rights and privileges granted by the aforesaid *Act* entitled '*An Act providing a General Corporation Law*,' approved March 10, 1899, to corporations of the character of the Corporation, and all powers conferred upon such corporations by the then existing laws of the State of Delaware, in so far as not in conflict therewith, or which may be conferred by all acts heretofore or hereafter amendatory of said *Act of March* 10, 1899, or of said laws, or supplemental thereto; but the enumeration herein of certain powers is not intended to be exclusive of, or a waiver of, any of the powers, rights or privileges granted or conferred by said *Act of March* 10, 1899, or of the laws of said State now or hereafter in force. * * * "

This is language of the most general character. On its face it would seem not to purport to affect the contractual relations between the corporation and its stockholders, or the contract of the stockholders *inter sese*, but only the powers and objects of the corporation. There is no reference to stockholders at all, and it is impossible to view the provisions of the corporate charter, under which the stock was issued, as constituting an express or implied assent by purchasers of stock to every corporate action under subsequent amendments of the general law resulting in the cancellation of all contractual rights. Although the Chancellor regarded the provisions as similar in substance, though not in terms, to the provision of the charter in the *Davis Case*, and while we express no opinion upon the correctness of his conclusion as rested upon the provision of the charter there before him, we think the provisions here are quite dissimilar. In that case the provision was,

"This corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation in the manner now or hereafter prescribed by statute, and all rights conferred on stockholders herein, are granted subject to this reservation."

The defendant contends also that the complainants have no vested right to the dividends accumulated by time and unpaid for the reason that when *Section* 26 was amend-

ed in 1927, the dividends upon Class A. stock were not cumulative. It is a sufficient answer to this contention that the power conferred by *Section* 26, as amended in 1927, was but a permissive power. From October 31, 1930, the stock was entitled to cumulative dividends. The dividends accumulated in accordance with the provisions of the charter under which the stock was issued. The amendment of 1927 granted a power only. It might never have been exercised. If exercised, it cannot destroy rights already vested.

Finally, the defendant urges that the complainants have not pleaded the unconstitutionality of *Section* 26, as amended, and cannot now rest their case on that ground. The bill of complaint alleges that the amendment to the charter, filed on February 23, 1935, is null and void in so far as it fails to provide for the payment of cumulative dividends on Class A. stock. It also charges that the payment of dividends, declared by the defendant on February 26, 1935, to holders of common stock without paying or providing for the payment of the accrued dividends on their Class A. stock is destructive of their rights. These allegations are sufficient to raise the constitutional question. The Chancellor, undoubtedly, passed upon it. There is no merit in this contention.

The order of the Chancellor sustaining the demurrer to the bill of complaint, and his decree dismissing the bill are reversed, and the cause is remanded to the Court of Chancery for such further proceedings and orders which, in conformity herewith, may be necessary.

RODNEY, J. sat in the argument of this case and in some conferences but a similar matter having arisen in which he had a personal interest, he withdrew from further consideration of this case and took no part in its final decision.

After the conclusion reached by the court had been announced and the above opinion had been filed, the solicit-

ors for Wilson & Co. Inc., asked leave to re-argue the case. In support of this motion the questions involved were thoroughly argued, but, as the court adhered to its original opinion the motion was denied.