**JOHNSON et v LAMPRECHT et**

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided Nov 22, 1937

M. B. and H. H. Johnson, Cleveland, for plaintiff-appellees.

Tolles, Hogsett & Ginn, Cleveland, for defendants-appellants.

**OPINION**

By TERRELL, J.

Plaintiffs prayed that the defendants be enjoined from consummating a certain plan of recapitalization of the National Refining Company. Plaintiffs also prayed for a mandatory injunction requiring that a dividend on the preferred stock be paid to them. The Common Pleas Court enjoined the defendants from consummating the plan of recapitalization but refused to grant an order for the payment of the cumulative

preferred dividends. The case is here on appeal on questions of law and fact.

The National Refining Company is an Ohio corporation engaged in the production, refining and marketing of petroleum products. Its plan of capitalization provided for common stock and preferred stock. There was outstanding 49,864 shares of preferred stock and 463,300 shares of common stock in summary the preferred stock provisions provided:

(1) That the preferred stock of par value $100.00 per share shall carry dividends at the rate of 8% per annum; (2) that said dividends shall be cumulative; (3) that any deficiency in the cumulative dividends on the preferred stock shall be a charge on the net profits of the company; (4) that the defendant corporation cannot, without the consent in writing of the holders of two-thirds in amount of the outstanding preferred stock, issue any shares ranking or a parity with or prior to the preferred stock, or create any charge except one arising in the ordinary course of business upon the net profits of the corporation which shall not be subordinate to the rights of the preferred stock or reserve surplus fund which shall not be chargeable with the payment of the accrued dividends on the preferred stock. The preferred stock provisions contained no redemption privilege and hence the preferred stock is non-callable. At the time it was attempted to effectuate this plan of recapitalization the dividends upon this preferred stock had accumulated to $26.00 per share, but later $8.00 per share was paid thereon.

The plan of recapitalization of which the stockholders were all advised, provided for the creation of a new class of six per cent prior preferred stock which would have priority over the old preferred stock and the common stock. The old preferred stockholders were offered the opportunity to exchange their stock for the new preferred stock. Those participating in the plan were to recieve for each share of the old preferred stock with accumulated dividends 1 1-3 shares of the new preferred stock and ¾ of a share of common stock. This plan was entirely optional with the preferred stockholders and if they did not exchange their old preferred stock under the plan it would continue to accrue dividends at the old rate and they would be entitled to these accruals before any dividends were paid on the common stock, precisely as their contract provided.

Plaintiffs objected to this plan of recapitalization because they deemed it in-

equitable and oppressive and an unfair exercise of the majority stockholders of their power for the sole purpose of destroying and impairing the rights of the minority preferred stockholders who did not consent to the proposed plan.

It is claimed by plaintiffs herein that this constitutes a clear fraud upon the minority preferred stockholders and that said plan should therefore be enjoined.

The plaintiffs herein who are called the minority preferred stockholders represent about five per cent of the outstanding preferred stock. The claim is further made by plaintiffs that this plan of recapitalization is compulsory to the detriment of the contractual rights of the preferred stock, if exercised by them, will cause the loss of many valuable features of the old preferred stock and if they elect to retain their present preferred stock they will lose the advantage of a first preferred stock. They ascribe to the directors fraudulent motives in conceiving and promoting this plan to their own personal advantage because they are predominantly interested in the common stock and they claim this whole scheme of recapitalization redounds to the advantage of the common stockholders.

The question to be determined then is, does the evidence disclose any such fraud upon the nonconsenting preferred stockholders or such inequity as should require the intervention therewith by a court of equity?

We first look to the contractual rights of the preferred stockholders and find therein that the company was not denied the right to issue a prior preferred stock, which would bear dividend rights and other rights on liquidation, prior to the old preferred stock. The only limitation we find upon the company in this respect is that before such prior preferred stock is issued the consent in writing of the holders of 2-3 in amount of the outstanding preferred stock should first be obtained.

In this case more than 2-3 of the outstanding preferred stock have voted in favor of the adoption of said plan of recapitalization at a meeting of the stockholders called for the very purpose of considering said plan and the owners of more than 2-3 of the outstanding preferred stock have consented in wriing to the adoption of said plan and have deposited their stock for exchange thereunder.

Plaintiffs' contractual rights under the preferred stock with reference to the plan to issue a

prior preferred stock have not, therefore, been violated.

Plaintiffs claim that they have vested rights in the present earned profits of the company to the extent of their accumulated and unpaid dividends on the preferred stock, and that the new plan defeats such rights because the prior preferred stock will share in said profits ▮▮▮▮▮▮ before the preferred stock dividends are paid. It is our conclusion that the preferred stockholders have no such vested interest in the present earned profits of the company. The company may use its present earned profits in the furtherance of its business within the honest discretion of its directors. There is no lien or earned profits which require the satisfaction of the cumulative dividends therefrom in all events as there might be in the case of a mortgage. The vested ▮▮▮▮▮▮ ed rights of a preferred stockholder under his contract is a preferential right only and that is to be paid the stipulated dividend before any common stockholder is paid any dividends. Were the preferred stock dividends a legal lien upon the earned profits requiring payment in all events, the directors at every quarter would be required to divide the profits whether or not the use thereof was necessary or advisable in the business.

This is an unreasonable position to take by the preferred stockholders and is untenable within the terms of their stock contract.

Several cases are cited by plaintiff to sustain their position which we will now consider. The first case is that of Keller v Wilson & Co., 190 Atl. 115, (Delaware 1936). In this case there had accumulated on the preferred stock, dividends of $21.25 a share and a plan of recapitalization provided for a conversion of the preferred stock plus its accumulated dividends into common stock without the payment of the accumulated dividends. The plan was enjoined because,

"Amendment of corporate charter insofar as it assumed to destroy rights of holders of cumulative preferred stock to dividends accrued on their stock up to the time of accomplishment held void and entitling such stockholders to arrears of dividends accumulated on their stock before distribution could be made to holders of common stock."

We agree entirely with this Keller v Wilson case. It does not assist plaintiffs to sustain the position for which they contend. The plan there was not optional and it further provided for the cancellation of the accumulated dividends. The plan in the case at bar is optional. If the option is not exercised the rights of the preferred stockholder to receive the accumulated dividends before any common stock dividend is paid, is preserved. The dividends still accumulate on the preferred stock and are all to be paid before any common stock dividend.

The next case cited is Lonsdale Corporation v International Company, 101 N. Y. Eq. 554. Plaintiffs were 6% cumulative stockholders with accumulated dividends of $70.00 per share. The plan of recapitalization provided for exchange of the preferred stock for new preferred stock, but did not preserve the right of the old preferred stockholder to be paid the accumulated and unpaid dividends. A permanent injunction against the plan was granted. We are in accord with this decision. This plan was not optional and if put into effect would deny preferred stockholders the preference to be paid their accumulated dividends before the dividends were paid on common stock. The court makes this significant statement referring to the rights of preferred stockholders to cumulative dividends:

"* * * they have become vested with rights as against the holders of common shares, in a surplus. * * *"

This means that the so-called "vested right" is merely a vested right of preference above the common stock.

In the case at bar, the right of the preferred stockholder to accumulated dividends to be paid in preference to common stock dividends is not interfered with.

The third case cited by plaintiff is Yoakum v Provident Biltmore Hotel Co., 34 Fed. (2d) 533 (1929). In this case the plan of recapitalization provided for the exchange of first preferred stock for a new issue, but that if the exchange was not made the terms of the old first preferred stock would be changed in the following respects: The dividends would no longer be cumulative; the voting rights were effectually taken away; the sinking fund for the retirement of the stock which was therefore provided was abolished and in the words of the court:

"In other words, if the holder of the first preferred stock were to elect not to make

the exchange he would be left with a stock still called first preferred, but stripped of nearly every characteristic which gave it value."

The court granted an injunction against this plan, with which we agree.

No such violation of contractual rights appear in the vase at bar. In the case at bar, preferred stockholders under the plan, have every right under the old preferred stock preserved to them. If they desire to retain their old stock they may do so in an unchanged condition. The dividends of 8% will accumulate thereon until paid and will be paid before any common stock dividend.

Apparently plaintiffs attempt to show fraud on the part of the directors by certain deductions as to the ill effect of the plan upon the rights of the preferred stockholders. We do not agree with the reasoning of plaintiffs. The plan as proposed preserves all rights to the old preferred stockholders. We are unable to see any trace of fraud on the part of the directors. We do not find any inequities in the plan against the plaintiffs or in favor of the directors.

It would unduly extend this memorandum to set forth our views on each deduction contended for by the plaintiffs. It will suffice to say we find the proposed plan of recapitalization legal, equitable and free from fraud. The prayer of plaintiff for injunction against the consummation of said plan will be denied.

The second phase of the case concerns a request of plaintiffs for a mandatory injunction directing the payment of a dividend on the preferred stock in such amount as the court deems proper and equitable. Upon this phase of the case the judges are unanimous in agreeing to the ruling of the Common Pleas Court. Such injunction should not be granted.

We fail to find that the directors abused their discretion in failing to declare and pay dividends on the preferred stock. The management of the corporation is in the hands of the directors and unless fraud or abuse of discretion intervenes the court should not interfere. This corporation has just emerged from the depression years during which great losses were suffered, notwithstanding which, the preferred stockholders were paid over one million dollars ($1,000,000.00). The working capital has been thereby reduced over three million dollars ($3,000,000.00) below that which was normally carried. The necessity for the declaration of a dividend on the preferred stock is not clearly shown and a mandatory injunction should not be granted.

LEVINE, PJ, concurs in judgment.
LIEGHLEY, J, dissents from the judgment denying injunction against the consummation of the proposed plan of recapitalization, and concurs in the judgment denying mandatory injunction for the declaration of dividends on the preferred stock.