THE CHANCELLOR.
This case is before this Court on a motion for a re-argument, and the importance of some of the questions raised seems to require a careful reconsideration of them. This is, particularly, true in view of the fact that, though an opinion was filed by the late Chancellor in the same case (Havender v. Federal United Corporation, Del. Ch., 2 A.2d 143), no decree was ever signed by him. In fact, he indicated in that opinion that he would hear further argument on the nature of the decree to be entered.
It is, also, contended that in any aspect of the case, the question of laches was not considered in the opinion previously filed.
On November 30th, 1936, the defendant corporation, by the requisite vote, took steps to merge or consolidate with "Corporation Bond and Share Company", claiming to have acted pursuant to the provisions of Section 59 of the General Corporation Law (Sect. 2091 Rev. Code 1935). Both of the corporations involved in the alleged merger were organized under the General Corporation Law of this State, and the defendant corporation absorbed "Corporation Bond and Share Company" and continued to function under its old name and charter, with certain changes in the original charter provisions, hereinafter referred to. All of the capital stock of "Corporation Bond and Share Company", was owned by "Federal United Corporation", the defendant. At the time of the alleged merger, the defendant corporation had a surplus of $744,988.16. It then had 17,612 shares of $6.00 cumulative preferred stock, as well as common stock, outstanding, and dividends had accumulated on the preferred stock by lapse of time, though they had not been actually declared, to the amount of $29.00 per share. The total arrears on the preferred stock dividends, therefore, amounted to $510,748.00. The complainants owned 1044 shares of that stock, and had owned it since the date of the incorporation of the defendant company in 1932. The unpaid dividends on their stock at the time the bill was filed amounted to $30,276.00, and at the time of the hearing in the case such accumulations amounted to considerably more.
By the provisions of the merger agreement, the financial setup of "Federal United *Page 621 
Corporation", the defendant, was materially changed and its surplus was capitalized, thereby depriving the complainants of the right to the payment, in cash, of such part of the accrued and unpaid dividends on their $6.00 cumulative preferred stock, as the directors might at any time deem it advisable to declare out of the corporate surplus.
Pursuant to the provisions of the merger agreement, all of the outstanding capital stock of "Corporation Bond and Share Company", the whole of which was owned by the defendant, was cancelled, and no stock in the new, or consolidated corporation was issued directly to that corporation, or to the owner of its capital stock.
"Federal United Corporation", the defendant, was organized January 25th, 1932. It did not appear when "Corporation Bond and Share Company" was organized, but it was not alleged, or proved, that it was created for the specific purpose of merging with the defendant corporation, in order to reclassify the stock of that corporation and to capitalize its surplus, so as to prevent the application of any part of it to accrued and unpaid dividends on its outstanding preferred stock. Nor is it claimed that the details of the merger plan adopted were, in any way, unfair to the complainants, as stockholders of the defendant corporation, except that it purported to take away their rights to the payment of any of their accrued and unpaid dividends in cash, and substituted stock interests therefor.
One of the important questions to be determined, therefore, is whether, at the time of the alleged merger, the complainants had vested rights in the corporate surplus because of dividends which had accrued on that stock by lapse of time, though not declared, which were protected by Keller v. Wilson Co., Inc., et al., Del.Sup., 190 A. 115, and Consolidated Film Industries v. Johnson, Del.Sup., 197 A. 489, or whether different principles are involved in a case of this nature. Both of the cases relied on by the complainants involved the construction of Section 26, as amended, of the General Corporation Law, while this case involves Section 59 of the same Act, Rev. Code 1935, §§ 2058, 2091.
Section 26 authorizes the amendment of corporate charters by "increasing or decreasing its authorized capital stock or reclassifying the same, by changing the number, par value, designations, preferences, or relative, participating, optional, or other special rights of the shares, or the qualifications, limitations or restrictions of such rights * * *".
In Keller v. Wilson Co., Inc., et al., supra, the corporation was created before Section 26, as amended, was passed, but in Consolidated Film Industries v. Johnson, supra, the corporation was created after Section 26, as amended, had been enacted. In both of these cases, it was held that when there are accrued and unpaid dividends on shares of stock, and surplus funds fairly applicable thereto, the owner of such stock has a vested equitable right or interest in such fund that cannot be taken away by amending the corporate charter under Section 26, so as to capitalize the surplus and thereby deprive him of the right to be paid such accrued dividends in cash. It was, also, held in those cases that the language of that section was purely prospective in its purpose and meaning.
The defendant corporation contends, however, that a different rule applies when two corporations merge under Section 59 of the General Corporation Law. That section provides:
"That any two or more corporations organized under the provisions of this chapter, or existing under the laws of this State, for the purpose of carrying on any kind of business, may consolidate or merge into a single corporation which may be any one of said constituent corporations or a new corporation to be formed by means of such consolidation or merger as shall be specified in the agreement hereinafter required; * * *".
The same section further provides: for an agreement between the corporations to be merged "prescribing the terms and conditions of consolidation or merger, the mode of carrying the same into effect, and stating such other facts required or permitted by the provisions of this Chapter to be set out in Certificates of Incorporation, as can be stated in the case of a consolidation or merger, stated in such altered form as the circumstances of the case require, as well as the manner of converting the shares of each of the constituent corporations into shares of the consolidated corporations, with such other details and provisions as are deemed necessary".
These provisions of Section 59 have been a part of the General Corporation Law since its first adoption (see Sect. 54, Chapter 273, Volume 21, Laws of Delaware), *Page 622 
and must be read into the defendant's charter to the same extent as though they had actually been inserted in it. Section 83 Gen.Corp. Law (Sect. 2115, Rev. Code 1935); see, also, Allied Chemical Dye Corp. v. Steel Tube Co. of America,14 Del.Ch. 1, 120 A. 486; Keller v. Wilson Co., Inc., Del.Sup., 190 A. 115; Morris et al. v. American Public Util. Co., 14 Del. Ch. 136,122 A. 696.
As I have already intimated, the defendant contends that Sections 26 and 59 of the General Corporation Law were enacted for very different purposes, and gave very different rights, and that this distinction clearly appears in the decisions of the New Jersey Courts of Equity; that Lonsdale Securities Corp. v. International M.M. Co., 101 N.J.Eq. 554, 139 A. 50, which involved a charter amendment affecting the equitable interest in a corporate surplus of the holders of preferred stock, on which there were accrued and unpaid dividends; was in accord with the principles recognized in Keller v. Wilson Co., Inc., Del. Sup., 190 A. 115, and Consolidated Film Industries v. Johnson, Del.Sup., 197 A. 489, supra; that in a corporate merger proceeding, pursuant to a statutory provision similar to Section 59 of our Act, where the plan adopted is fair to the stockholders, the right to change the financial setup of either, or both, of the constituent corporations, including the reclassification of stock and the capitalization in whole or in part of an accumulated surplus, is, however, necessarily implied from the very nature of such a proceeding, and the financial adjustments that are always incident thereto; and that the recent New Jersey cases support that contention. Windhurst v. Central Leather Co., 101 N.J.Eq. 543, 138 A. 772; Id., 107 N.J.Eq. 528,153 A. 402; see, also, Jones v. St. Louis Struct. Steel Co., 267 Ill.App. 576 and MacFarlane v. North American Cement Corp.,16 Del.Ch. 172, 157 A. 396, both of which involve Section 59 of our Act; 1 Machen Law of Corp. § 538; but see Colgate v. U.S. Leather Co., 73 N.J.Eq. 72, 74, 67 A. 657; Id., 75 N.J.Eq. 229,72 A. 126, 19 Ann.Cas. 1262.
The defendant necessarily concedes, however, that if the plan adopted in a corporate merger is not fair and equitable to the interested stockholders, it will always be enjoined by a Court of Equity. Cole et al. v. National Cash Credit Ass'n,18 Del. Ch. 47, 156 A. 183; MacFarlane v. North Amer. Cement Corp.,16 Del.Ch. 172, 157 A. 396; Windhurst v. Central Leather Co.,101 N.J.Eq. 543, 138 A. 772; Bingham et al. v. Savings Invest. 
Trust Co., 101 N. J.Eq. 413, 138 A. 659.
In Windhurst v. Central Leather Company, 105 N.J.Eq. 621,149 A. 36, 38, the Vice-Chancellor aptly remarked:
"Any dealings with the rights of stockholders of any class [in merger proceedings] will be enjoined upon the application of any properly interested party, if the same is ultra vires, fraudulent, or otherwise inequitable".
In most merger cases, there would seem to be force in the defendant's contention (see 1 Machen Law of Corp. § 538) but under the facts of this case it is unnecessary for me to consider the extent to which the rules relating to unfair and inequitable treatment of stockholders may be carried in particular cases. See Colgate v. U.S. Leather Co., 73 N.J.Eq. 72, 74, 67 A. 657; Id.,75 N.J.Eq. 229, 72 A. 126, 19 Ann.Cas. 1262; 1 Machen Law of Corp. § 538.
After the prior argument, the court held that under the facts the so-called merger was, at the most, a mere technical combination of the two corporations, and the amendment of the defendant's charter, reclassifying its stock, and the capitalization of its surplus, was its real purpose, and not merely incidental and collateral to the merger. For these reasons, the Chancellor held that a Court of Equity would not permit the merger to affect injuriously the rights of objecting stockholders. He refused, however, to adopt the complainants' contention that the financial setup of a corporation could never be changed, or its surplus capitalized in any merger under Section 59 of the General Corporation Law.
The precise question to be determined is whether the consolidation of a corporation with a wholly owned subsidiary, under the terms agreed on in this case, is, in fact, a real combination or merger, within the intent and purpose of that section of the statute, or whether it was an ultra vires act.
Independent of any other possible question, the complainants' alleged rights are of a contractual nature, based on certain provisions of the defendant's charter, which expressly give the $6.00 cumulative preferred stock preferential rights over the common stock in the payment of dividends out of the corporate surplus. But, in determining whether they have a vested equitable *Page 623 
interest in that surplus, because of the accrued and unpaid dividends on their old preferred stock, the merger section above referred to must also be read in connection with the charter provisions relied on by the complainants.
The defendant corporation points out that the only claim made by the preferred stockholders is that, by the plan adopted in the merger proceedings, they are deprived of their right to have the accrued and unpaid dividends on their stock paid in cash; it, therefore, contends that the right of the two corporations to merge is merely a question of corporate power, and that such power is clearly given by the statute.
The first part of Section 59 provides that "Any two or more corporations, organized under the provisions of this Charter * * may consolidate or merge into a single corporation". But the latter part of the same section, also, provides that the combination or merger agreement shall state, among other things, "the manner of converting the shares of each of the constituent corporations into shares of the consolidated corporation".
Under the so-called merger plan adopted, one share of the new $3.00 cumulative preferred stock and six shares of the common stock were to be issued by the defendant corporation in exchange for each share of the old $6.00 cumulative preferred stock, originally issued by it, and the whole of the capital stock of "Corporation Bond and Share Company" was to be cancelled, and no stock was to be issued in exchange therefor. In view of the facts, this was, perhaps, a natural and practical procedure, if permitted by the provisions of the charter and the statute composing a part of it; but the language used shows that it was not within the contemplation of that statute, when fairly and reasonably construed, and is, therefore, not binding on objecting stockholders, unless they have lost their rights by some act or neglect on their part. The correctness of this conclusion seems to be shown by the fact that in April of 1937 the legislature deemed it necessary to amend the General Corporation Law by adding certain express provisions relating to the merger of a parent corporation with a wholly owned subsidiary. Volume 41 Laws of Del.Chapt. 131. That statute does not apply to this case as the alleged merger took place on November 30th, 1936. The merger agreement was approved by more than the requisite statutory vote at the stockholders' meeting called to consider it. The complainants had notice of the proposed consolidation plan, and on November 24th, 1936 notified the corporate officers that they deemed that plan illegal, and would not vote their stock in favor of it. The proposed plan was, however, carried out after it had been approved at the stockholders' meeting, and on December 1st, 1936 and April 1st, 1937 quarterly dividends were declared and paid on the new $3.00 preferred stock, issued pursuant to the merger agreement. A dividend on the same stock was declared on June 1st, 1937, payable on July 1st of that year, or the day after the complainants' bill was filed. It seems that a dividend was, also, paid on October 1st, 1937. Because of the refusal of the complainants to surrender their old preferred stock certificates in exchange for the new certificates, provided for by that agreement, no such dividends were, however, paid to the complainants. By letters, dated February 10th and March 2nd, 1937, demands for payment of such dividends were made by the complainants, based on Keller v. Wilson Co., Inc., supra, but such demands were refused. New stock certificates were printed by the defendant, and a considerable amount of the old $6.00 cumulative preferred stock was surrendered in exchange for the new $3.00 preferred stock. There were, also, transfers of the new stock certificates among the various holders of it. On April 1st, 1937 the complainants employed counsel to protect their alleged rights, and on June 30th, 1937, after it had become apparent that their differences with the defendant company could not be reconciled, filed their bill, and the case was subsequently brought to trial. All of these facts were pointed out by the late Chancellor. Some expense was naturally incurred in carrying out the merger plan, including the printing of the new stock certificates, but, as I view it, the facts do not justify the conclusion that the complainants have lost their rights by laches, or otherwise. Their position was perfectly clear from the very beginning, and there is nothing to indicate that the defendant did not clearly understand it, or was, in any way, misled by any act of theirs, including their failure to file their bill until about seven months after November 30th, 1936. In fact, it would seem that the new certificates must have been printed by the defendant corporation as early as December 1st, 1936, when the first dividend was declared on the new stock. *Page 624 
The general principles governing the defense of laches are considered with sufficient particularity in Bay Newfoundland Co. v. Wilson Co. Inc., Del.Ch., 4 A.2d 668, and need not be repeated here. See, also, Orloff v. Stott, 239 Mich. 563, 215 N.W. 1. Trounstine v. Remington Rand, Inc., Del.Ch., 194 A. 95 and Beling v. American Tobacco Co., 72 N.J.Eq. 32, 65 A. 725, both involve a very different state of facts. A very different remedy was, also, sought in the latter case. True, the evidence shows that some of the new preferred stock, issued by the defendant, had changed hands among the various owners before June 30th, 1937, when the complainants filed their bill, but it does not appear that the rights of the holders were seriously affected by the complainants' alleged delay; a delay that was well within the usual analogous period covered by the Statute of Limitations, relating to similar claims, and during a period when the defendant had full knowledge of the complainants' position. In fact, the complainants merely request this Court to declare the merger void, in so far as their stock is concerned, and do not claim that it should be declared void as to all stockholders. The complainants did not apply for a valuation of their stock, pursuant to the provisions of Section 61 of the General Corporation Law, Rev. Code 1935, § 2093, and it is not contended that it can be valued now. In view of what I have already said, it is, therefore, apparent that the old $6.00 cumulative preferred stock held by them is still a valid, outstanding stock of the defendant corporation, with all the preferential rights with respect to the payment of dividends out of the surplus earnings that were given that stock by the defendant's Certificate of Incorporation, filed January 25th, 1932. By reason of that fact, at the time of the merger the complainants had vested rights in the corporate surplus which was capitalized in that proceeding, and, as was pointed out in Havender v. Federal United Corporation, Del.Ch., 2 A. 2d 143, are entitled to an injunction against the declaration and payment of dividends on the two classes of common stock until the accumulated and unpaid dividends on the old $6.00 preferred stock shall have been paid. See Keller v. Wilson Co., Inc., Del.Sup., 190 A. 115, and Consolidated Film Industries v. Johnson, Del.Sup., 197 A. 489, supra; see, also, Yoakam v. Providence Biltmore Hotel Co., D.C.,34 F.2d 533.
At the time of the merger, on November 30th, 1936, the accrued and unpaid dividends on the complainants' $6.00 cumulative preferred stock amounted to $30,276.00. Applying the above principles, the complainants are, also, entitled to an injunction against the payment of any dividends on the new $3.00 cumulative preferred stock until such accumulated dividends shall have been paid. Perhaps, I might, also, point out that the dividend of December 1st, 1936, on the new preferred stock, must have been paid out of the surplus which had been accumulated by the corporation prior to the merger, and in which the complainants had preferred, equitable rights.
Notwithstanding the preferential rights of the complainants to the payment of dividends on their stock out of the corporate earnings, the defendant company has always contended that the new $3.00 cumulative preferred stock was a valid issue, even as to objecting stockholders, and that the old $6.00 cumulative preferred stock was no longer a corporate obligation. It declared and paid dividends on that stock alone at various times during the year following the merger. During that year the further sum of $6,264.00 had accrued in the way of dividends on the complainants' old $6.00 preferred stock, but no such dividends were either declared or paid. In view of these facts, the complainants are entitled to an injunction against the payment of any further dividends on the new $3.00 preferred stock until the said sum of $6,264.00 shall have been paid. For the same reason they are also entitled to an injunction against the payment of any future dividends on the new $3.00 preferred stock until the dividends that may have then accrued on the complainants' stock shall have been paid. See West Chester Phila. R. Co. v. Jackson, 77 Pa. 321. That case arose in a different manner, but involved somewhat similar principles. Morris et al. v. American Pub. Utilities Co., 14 Del.Ch. 136, 122 A. 696, is not inconsistent with this conclusion, as the change in the defendant's charter expressly provides for the surrender and cancellation of the old $6.00 cumulative preferred stock, and the issuance of a new and different preferred stock, together with a certain number of shares of common stock, in exchange therefor.
Let a Decree be prepared in accordance with this opinion.
 *Page 519