JOSEPH SHANIK, suing on behalf of himself and all other Stockholders of White Sewing Machine Corporation similarly situated,

Complainant Below,

and NORMAN JOHNSON,
Intervening Complainant Below,
Appellants,

*vs.*

WHITE SEWING MACHINE CORPORATION, a corporation of the State of Delaware,

Defendant Below, Appellee.

*Supreme Court, On Appeal, April 18, 1941.*

LAYTON, C. J., and RICHARDS, RODNEY, SPEAKMAN, and TERRY, JJ., sitting.

*Hering, Morris, James & Hitchens,* and *H. Paul Shanik,* of Brooklyn, N. Y., for Joseph Shanik.

*William H. Foulk,* and *Arthur Garfield Hays,* of New York City, for intervener, Norman Johnson.

*Hugh M. Morris* and *S. Samuel Arsht,* for White Sewing Machine Corporation.

STATEMENT OF THE CASE. This is an appeal from a decree of the Court of Chancery dismissing the bill of complaint originally filed in that court. See *ante p.* 154, 15 *A. 2d* 169. The case involves the legality and propriety of certain changes in the capital structure of the appellee, made under the following circumstances:

In 1926, the appellee had two classes of capital stock, preference stock of 100,000 shares authorized and outstanding, and of common stock 400,000 shares were authorized and 200,000 outstanding. Under the charter each share of the preference stock entitled the holder to cumulative dividens of $4 per annum, before any dividends were paid on the common stock; each share of preference stock had a liquidation value of $50 in addition to unpaid cumulative dividends, and a redemption value, at the option of the corporation, of $55, together with accumulated dividends, and each share was convertible at the option of the holder, into one share of common stock. The common stock was entitled to distribution of dividends and of corporate assets upon dissolution, after satisfaction of the priority of the prefer-

ence stock. During the years 1930 to 1934 the corporation suffered substantial losses from operation. The corporation made a small profit in 1935, and larger profits in 1936 and 1937.

At the end of 1937 the corporation had a consolidated deficit from operations of $3,167,228.26, after deducting capital surplus. Cumulative dividends were due and unpaid on the preference stock to the extent of $31 per share, or a total of $3,100,000. In 1938 the defendant put forward a plan of recapitalization which was subsequently approved and adopted by a very large majority of stock of both classes. The plan proposed an amendment of the charter, to authorize three classes of stock, briefly described as follows:

That prior preference stock (100,000 shares) be preferred over the other two classes, each share having a par value of $20; entitled to dividends of $2 per annum, cumulative after January 31, 1941; with a liquidation value of $25 plus accumulated dividends, and redeemable at the corporation's option, after January 1, 1942, at $35, plus accumulated dividends.

Preference stock (100,000 shares) with the stated rights and preferences as set out in the charter.

Common stock (500,000 shares) having a par value of $1 per share, entitled to distributions after satisfaction of the priorities of the prior preference and of the preference stock. By the amendment each share of the old common stock was converted into 2/5 of a share of the new common stock.

Under the plan each share of preference stock may be exchanged by the holder for one share of prior preference stock and three shares of new common stock.

The amount of capital represented on the corporation's books by the preference stock had been $5,000,000 and by the old common stock $750,000. The plan proposed a re-

duction of the defendant's capital from $5,750,000 to $2,-380,000; and an allocation of capital to each share of the three classes of stock created by the amendment, as follows:

Prior preference stock, $20; preference stock $23 (instead of $50 before the reduction in capital) ; common stock $1 (instead of $3.75 for each share of old common). It was intended that the reduction of capital should eliminate the consolidated deficit and give rise to a surplus in excess of $200,000.

Pursuant to the suggested plan of reorganization the directors, on November 14, 1938, adopted certain resolutions to carry it into effect, and on December 12, 1938, the stockholders, by a large majority of each class of stock, approved the plan. On June 28, 1939, the plan of reorganization was declared operative by the directors and the certificate of incorporation amended on August 5, 1939, in the manner provided by law. On August 7, 1939, the (new) prior preference stock, and the reclassified common stock, were admitted to trade on the New York Stock Exchange. Approximately 90 per cent of the old preference stock was duly exchanged according to the plan.

On December 18, 1939, the directors met and declared a dividend of fifty cents per share on the prior preference stock, such dividend to be payable February 1, 1940, to stockholders of record on January 30, 1940. It was stipulated in the case that the resolution declaring said dividend expressly stated that the dividend was paid out of net profits of the corporation since the filing of the amended certificate of incorporation on August 5, 1939.

On January 26, 1940, the appellant, Joseph Shanik, filed a bill, and a restraining order withheld the payment of the dividend. The defendant filed a demurrer to the bill, and on August 14, 1940, the demurrer was sustained, and on August 30th the restraining order was dissolved and the bill dismissed.

On January 8, 1941, Norman Johnson, the intervenor, filed his petition to intervene in order that an appeal from the decree of the Chancellor might be taken, and stated in such petition that the intervenor was informed and advised that the original complainant did not contemplate an appeal. The petition for intervention stated that the petitioner had bought his stock in March, 1940, and copies of his stock certificates in the record bear special reference to the amendment of August 5, 1939. The petition for intervention was garnted by the court below.

The errors assigned were eight in number. Seven of these assignments alleged, by varying language, the invalidity or illegality of the proposed method of recapitalization. The first assignment was that the "court erred in failing to find that the appellee's plan of recapitalization and reduction of capital was unfair."

RODNEY, Judge, delivering the opinion of the court:

From the foregoing facts three questions are presented. First, a consideration of the claim of unfairness as to the plan of recapitalization; second, a consideration of the validity or legality of the plan, and third, the effect of laches on the part of the original complainant and of the intervenor.

We shall but briefly consider the question of fairness of the plan of recapitalization. The first assignment of error states that the "court erred in failing to find that the appellee's plan of recapitalization and reduction of capital was unfair." The appellee insists that no question of fairness of the plan is properly before this court, because such question was never raised in the court below, and cites *Trout v. Farmers' Trust Co.*, 19 *Del. Ch.* 437, 168 *A.* 208, and *Stephenson v. Commonwealth & Southern Corporation*, 19 *Del. Ch.* 447, 168 *A.* 211. Those cases held that questions not raised and preserved for review in the trial court will not be considered on appeal. The learned Vice-Chancellor in his opinion in the court below, states "The changes under

the plan are not charged to be unfair," and a critical examination of the bill fails to disclose that any issue of fairness, as such, was before that court. In the reply brief the appellant disclaims any reliance upon unfairness "in its colloquial sense," and adhering to the cited decisions we shall not consider the question of fairness of the plan except insofar as it is inextricably interwoven with the issue of legality.

It is, of course, a trite expression to remark that a purchaser of stock takes it subject to the provisions of the charter and of the constitution and statutes of the state of corporate origin. No objection is taken to the execution of the formalities of the amendatory action of the recapitalization, either in the reclassification of stock by charter amendment or in the reduction of capital, so that we may pass at once to the question of legality of the proposed plan.

The statute, *Sec.* 26 of the *Corporation Law, Sec.* 2058, *Revised Code of Delaware* 1935, gives power to a corporation, after obtaining the required vote of stockholders, to amend its charter "by increasing or decreasing its authorized capital stock or reclassifying the same, by changing the number, par value, designations, preferences, or relative, participating, optional, or other special rights of the shares * * *."

The charter here involved, as it existed prior to the changes objected to, provided that the then preference stock, should be entitled to fixed cumulative dividends of $4 per share per annum "before any dividends shall be paid or declared upon and/or set apart for the common stock." That in substance, insofar as this case is concerned, was the preference, and the only preference, to which the stock was entitled.

The difficulties of the present case seem to grow out of the circumstance that attached to the preference stock was the right to accumulated and unpaid dividends, which in 1938 amounted to $31 per share. To ascertain the legality

of the plan of recapitalization we shall consider first the validity of the plan as if there had been no accumulated dividends in arrear on the preference stock, and then consider what change, if any, is brought about by reason of such arrearage.

If there had been no accumulated dividends in arrear at the time of the proposed voluntary plan of recapitalization we are at a loss to know on what grounds any objection could have been made. The relative priority of the old preference stock over the common stock would have been preserved, and the only effect would have been the creation of a prior preference stock having priority to the preference stock retained by the non-assenters to the voluntary change. This was the precise situation in *Morris v. American Public Utilities Co.*, 14 *Del. Ch.* 136, 122 *A.* 696. There, under the same statute as in force when the corporation now discussed was formed, and under substantially the same facts, the court held valid the creation of prior preference stock. The *Morris* case was decided in 1923, and during the intervening years has been understood and acted upon by the bar, cited in many other jurisdictions, and approved by this court. *Penington v. Commonwealth Hotel Construction Co.*, 17 *Del. Ch.* 394, 155 *A.* 514, 75 *A. L. R.* 1136, and *Keller v. Wilson & Co.*, 21 *Del. Ch.* 391, 190 *A.* 115.

And now we must consider what effect, if any, the existence of accumulated and unpaid dividends upon the preference stock has to the legality or validity of the proposed plan of recapitalization.

The courts of this state have had several occasions to consider the nature and effect of cumulative dividends in arrear, which have become due and accumulated through passage of time. *Morris v. American Public Utilities Co.*, supra; *Penington v. Commonwealth Hotel Construction Co.*, supra; *Keller v. Wilson & Co.*, supra; *Consolidated Film Industries v. Johnson*, 22 *Del. Ch.* 262, 197 *A.* 489.

The *Morris* case, we think, is distinguishable from the present case in only one particular. In that case, under identical statutory authority and analogous corporate power as here involved, the court upheld, as we have shown, the right to create a prior preference stock where the only charter priority of the preference stock was over common stock. The right to change the preference and create the prior preferred stock was held in strict conformity with the terms of the contract which the members of the corporation had themselves adopted. The court refused to restrain the payment of dividends on the newly created prior preferred stock before payment on what had theretofore been the preference stock, holding that the only charter preference of dividends was a priority of payment before any payment of dividends should be made upon common stock. The court was explicit in its treatment, as a severable question, of the right to disturb accumulated dividends in arrear, which had accumulated on cumulative preferred stock. The court held the existence of accumulated dividends as a present property interest in the person entitled and that such person as against the common stockholder was, in substance, a creditor, and that as against the consent of the holder the right to accumulated dividends could not be destroyed. It was this attempt, in the *Morris* case, to destroy the right to accumulated dividends in arrear, that furnishes the only discernible distinction between that case and the present. In the present case there is no attempt to destroy the accumulated dividends in arrear, but the right to such dividends is maintained and retained by the holders of the former preference stock who are non-assenters to the plan of recapitalization.

In *Penington v. Commonwealth Hotel Construction Co., supra,* this court considered accumulated dividends in arrear in connection with the dissolution of the company. The court held accumulated dividends in arrear as a property

right of the holder, which from the time of their accrual were fixed and merely awaited the creation or existence of a legal fund for their payment.

The question of accumulated dividends in arrear was again considered in *Keller v. Wilson & Co.* and *Consolidated Film Industries v. Johnson, supra.* The substantial distinction between the two cited cases existed in the fact that the former dealt with a charter created prior to a statutory amendment of 1927, and the latter considered corporate powers subsequent to such amendment. Both cases, however, involved an attempt either to wipe out accumulated dividends in arrear or to compel their transmutation, in part at least, into common stock. In the *Keller* case in particular there is an elaborate discussion of the rights incident to accumulated dividends on preferred stock, and this court held that such accumulation could not be destroyed without the consent of the holder, nor the holder compelled to exchange such accumulation of arrearage into common stock. With this holding we are now in accord, and nothing herein can reasonably be construed to be otherwise. *Federal United Corporation v. Havender,* 24 *Del. Ch.* 318, 11 *A.* 2d 331, when properly understood, was in no way in conflict with the foregoing cases. In that case the court merely declined to extend the legal principles arising under *Sec.* 26 of the *Corporation Law* to an entirely different statutory proceeding providing for merger of corporations in which any dissenting stockholder had a statutory right to have an appraisement of the value of his stock and accumulated dividends in arrear, and the value thereof paid to him in cash.

In the present case none of these situations exist. Here the transfer, if made, is purely voluntary, and any dissentient to the plan may keep his original preference stock with all accumulated and unpaid dividends thereon, and his relative position with reference to the common stock (the only preference to which he was ever entitled) remains precisely the same as if no change had been made. His accumulated

dividends in arrear are not, in any sense, wiped out, but remain awaiting a legal fund for their payment, and they must be paid before dividends are paid upon the common stock. We think there was no conflict between the *Morris* case and the *Keller* case, and the present case being substantially similar to the *Morris* case, we think there is no conflict between the *Keller* case and the present.

Courts in other jurisdictions have considered identical or strongly analogous situations to those here involved. Reference to the cases without copious extracts must be sufficient.

*Johnson v. Fuller, et al., (D. C.)* 36 *F. Supp.* 744, is strongly in point and seems impossible to distinguish. There the plan of recapitalization was substantially the same as the present and holders of old preferred stock had the same rights, either to keep his preferred stock with accumulated dividends retaining priority over common stock, or to exchange it into newly created debenture and prior preference stock together with some common stock. There the court reached the same conclusion as herein reached, and its reasoning loses none of its pertinency because it cites, with approval, the opinion of the court below in the present case.

Attention should also be specifically directed to *Johnson v. Lamprecht*, 133 *Ohio St.* 567, 15 *N. E.* 2d 127; *Kreicker v. Naylor Pipe Co.*, 374 *Ill.* 364, 29 *N. E.* 2d 502; *Blumenthal v. DiGiorgio Fruit Corp.*, 30 *Cal. App.* 2d 11, 85 *P.* 2d 580; *Yoakam v. Providence Biltmore Hotel Co., (D. C.)* 34 *F.* 2d 533; *Ainsworth v. Southwestern Drug Co., (5 Cir.)* 95 *F.* 2d 172.

It is somewhat difficult to determine whether the appellants' objection to the plan of recapitalization arises by reason of the creation of prior preferred stock having priority to the former preference stock, or whether it arises from a consideration of the supposed enhancement of the value of the common stock. It is argued that plans of re-

capitalization affecting accumulated dividends in arrear originate in the holders of junior securities. In this case there were no junior securities but common stock, and the inference is suggested that the plan is in the interest of common stock and therefore not fair. It is quite doubtful whether this matter should be at all considered, since questions of fairness were never suggested in the court below, and this question seems clearly separable from questions of legality. At the expense of brevity the matter will be briefly considered.

The company or its predecessors are stated to have been in existence since 1876. The company was not insolvent in either the equity or bankruptcy sense and could not have been forced into involuntary liquidation. It is true that during the depression years of 1930-1934 an operating deficit occurred, consisting largely of unpaid dividends, and in 1938 there were accumulated dividends in arrear of some $3,000,000. In 1935 there was a profit of over $35,000 and in 1936 the profit reached $280,000 and in 1937 about $300,-000. The common stock had considerable potential value but the time of realization, especially as to dividends, must normally, without recapitalization, have been deferred while current profits paid the accumulated preferred dividends in arrear, but no plan of reorganization or recapitalization could be effected without the concurrence of common stock.

The facts of the present case concerning the common stock, the status of the company or the nature of the proceeding do not fall within the category of *Case v. Los Angeles Lumber Products Co.*, 308 *U. S.* 106, 60 *S. Ct.* 1, 84 *L. Ed.* 110, or similar cases cited. There the court considered solely the question of "fairness" as required by the *Bankruptcy Act*, 11 *U. S. C. A.* § 1 *et seq.*, as applied in a mandatory proceeding and affecting a corporation insolvent in both an equity and bankruptcy sense. There must also be distinguished those cases like *Page v. Whittenton Mfg. Co.*, 211 *Mass.* 424, 97 *N. E.* 1006, where it was held

that in partial liquidation, common stock must be resorted to, even to the point of extinction, before preferred stock, having liquidation preference, could be called on to contribute. Here the preference stock contributed to no loss whatever.

The common stock gave up three-fifths of its value and one share of old common stock was transferable into two-fifths of a share of new common stock, and a common stock ownership of 200,000 shares is reduced to 80,000 shares. If this reduced interest is subsequently enhanced in value as a direct result of the recapitalization it is difficult to understand the complaint of any preferred stockholder. If a holder of old preference stock exchanges such stock for prior preference stock he is still, by the prior preference stock, entitled to priority over the common stock both as to dividends and in liquidation, and, in addition he has three shares of common stock for each share of old preference stock; if a holder of old preference stock does not desire to exchange his stock he retains his priority over the common stock both in liquidation and as to dividends in the future, and his dividends in arrear must be paid in full before any dividends can be paid on the common stock. Success of the company and the consequent enhancement of the value of the common stock must result to the benefit of all holders of preferred stock whether they have agreed to the new plan or not; failure of the company and the consequent depreciation of the value of the common stock would not change the relative status existing between the old preference stock and the common stock.

We shall pause but briefly to consider the question raised by the appellant that the prior preference stock and the new common stock issued in accordance with the recapitalization were invalid as being issued without consideration. The Delaware law provides that stock may be issued for "cash, by labor done, by personal property, or by real property or leases thereof." *Rev. Code* 1935, § 2046. The

new prior preference stock and new common stock were issued under the plan in consideration of the surrender of the old preference stock or common stock, as the case might be. The old stock was personal property within the meaning of the statute. *Johnson v. Lamprecht*, 133 *Ohio St.* 567, 15 *N. E.* 2d 127; *Mitchell v. Mitchell, Woodbury & Co.*, 263 *Mass.* 160, 160 *N. E.* 539. No authorities are brought to our attention which hold to the contrary.

We must now briefly consider the question of laches, and this consideration will separately deal with the conduct of the original complainant and of the intervenor.

The following seem to be the material facts and dates:

March 7, 1938, copies of the proposed charter amendment and capital reduction mailed to all stockholders, including complainant.

Dec. 12, 1938, stockholders meeting approved plan of recapitalization.

June 28, 1939. Plan declared operative by board of directors.

Aug. 5, 1939. Amendment to charter and certificate of reduction of capital filed.

Aug. 7, 1939. New prior preference stock and new common stock admitted to trading on New York Stock Exchange.

Dec. 18, 1939. Dividend of 50¢ per share on new prior preference stock declared by directors, payable Feb. 1, 1940.

Jan. 22, 1940. Some 87,879 shares of old preference stock had been exchanged for new preference stock and 263,637 shares of new common stock.

Jan. 26, 1940. Bill of complaint filed.

Aug. 9, 1940. Opinion of court below filed, followed by decree of Aug. 31, 1940, dismissing the bill.

Jan. 8, 1941. Petition of Norman Johnson, praying leave to intervene, filed, he having bought his stock in March, 1940.

This court has had recent occasion to consider the action of dissenting stockholders with reference to a charge of laches. In *Federal United Corporation v. Havender,* 24 *Del. Ch.* 318, 11 *A.* 2d 331, 343, this court reviewed the pertinent authorities where periods of delay had covered from one to ten months. In the cited case the court said:

"What constitutes unreasonable delay is a question of fact dependent largely upon the particular circumstances. No rigid rule has ever been laid down. Change of position on the part of those affected by non-action, and the intervention of rights are factors of supreme importance. The promptness of action demanded of a stockholder objecting to the accomplishment of a proposed corporate act * * * is dependent in a large degree upon the effect of his delay on others; and where many persons will be affected by an act that involves a change of capital structure and a material alteration of rights attached to stock ownership, the stockholder, having knowledge of the contemplated action, owes a duty both to the corporation and to the stockholders to act with the promptness demanded by the particular circumstances."

Again the court said:

"Sitting by inactive and in what amounts to silence, when every consideration for the rights of others demanded prompt and vigorous action, and until affairs had become so complicated that a restoration of former status was difficult, if not impossible, is conduct amounting to laches."

It remains to apply the law to the present facts.

The complainant knew of the contemplated plan from March 7, 1938; he knew of the approval of the plan by the stockholders on December 12, 1938, and that the plan would become effective. He knew that on June 28, 1939, the directors declared the plan operative, and that the formal corporate action in filing the requisite papers was taken on August 5, 1939. More particularly he knew that after Au-

gust 7, 1939, the new prior preferred stock and the new common stock were freely admitted to trading on the New York Stock Exchange. Notwithstanding all this knowledge, he took no action until January 26, 1940. At that time more than 87 per cent. of the holders of old preference stock had changed their position and exchanged their old preference stock for new securities in accordance with the plan of recapitalization and their old status cannot be restored; at that time the new securities had been freely traded in on the New York Stock Exchange for almost six months, and the rights of new stockholders have intervened. The complainant cannot say his action was not required until a dividend was declared and payable on the new prior preference stock. He knew certainly from August 5, 1939, when the amended charter was filed, that whatever dividends were to be paid in the future must first be paid on the new prior preference stock, and that such stock had priority over the old preference stock. We have no hesitation in saying that the action and course of conduct of the complainant constituted laches which prevented affirmative action on his bill of complaint.

If established rules of law would have prevented the granting of relief to the original complainant then these same rules operated much more strongly against the intervenor. Indeed, the equities of the intervenor are so indistinct as to make questionable any right to intervene at all if the petition to intervene had been opposed. The intervenor bases his right upon purchases of stock by him in March, 1940, some nine months after the plan of recapitalization had been declared to be effective, and some seven months after the stock had been freely subject to trading on the New York Stock Exchange. It nowhere appears in the record that the stock held by the intervenor was voted against the plan of recapitalization and, for all that appears, such stock may have been voted in favor of the plan. The law is quite clear that it is only non-assenting stockholders who have not been guilty of laches who can be heard upon

such matters as here involved. The measure of protection afforded to non-assenting stockholders in any prospective plan of reorganization is applicable only to those stockholders whose rights are, in some way, affected by the plan. It does not include those persons who voluntarily and with knowledge become stockholders long after the plan has become effective.

The decree of the Chancellor will be affirmed, with costs against the intervenor.